IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| XAVIER K-JUAN RASADON CRAIGHEAD, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> HAROLD W. CLARKE, *et al.*, ) <br> ) <br> Defendants. ) | Civil Action No. 7:20-cv-00356 <br><br> **MEMORANDUM OPINION** <br><br> By:  Hon. Thomas T. Cullen <br>      United States District Judge |

Xavier K-Juan Rasadon Craighead ("Craighead" or "Plaintiff"), a Virginia inmate incarcerated at Wallens Ridge State Prison ("Wallens Ridge") and proceeding *pro se*, filed this civil action under 42 U.S.C. § 1983 against seven employees of the Virginia Department of Corrections ("VDOC") (collectively, "Defendants"), alleging violations of his rights under the Eighth Amendment. This matter is before the court on Defendants' motion to dismiss. After reviewing the pleadings, the court concludes that Craighead's complaint fails to state a plausible claim against Defendants Clarke, Robinson, Manis,[1] Zook, or Anderson, and will grant the motion to dismiss as to those Defendants. But the court concludes that Plaintiff *has* alleged facts sufficient to state plausible § 1983 claims for violations of Craighead's Eighth Amendment rights against Defendants King and Woodward; Defendants' motion will be denied as to those defendants.

---

[1] Plaintiff misspelled the name Defendant Manis. The clerk will be directed to update the docket to reflect that defendant "Manias" should be spelled as "Manis."

## I.    Craighead's Allegations

In a verified complaint filed on June 19, 2020, Craighead alleges that at about 1:30 p.m. on December 2, 2019, the cell doors in his pod were opened to permit the inmates to congregate for recreation. As Craighead entered the common area of his pod, a fight broke out between two inmates, about 10 feet away from him. Defendant Woodward and other correctional officers responded to the fight. Craighead alleges that Woodward shot an "impact round"[2] without warning, hitting Craighead on the right side of his face. Craighead also alleges that, as correctional officers entered the pod to identify who was fighting, Defendant King, the Incident Captain, "pointed out" Craighead.[3]

Craighead was then taken for medical attention, and Defendants King and Anderson spoke to Craighead before he was returned to the pod. Craighead alleges that Anderson—who was a Major on the correctional staff at that time[4]—and King told Craighead he would not be returned to the pod until review of camera video confirmed that Craighead was not involved in the fight. The video evidence evidently confirmed that Craighead was not involved, and Craighead was returned to the pod a few minutes later.

Later that evening, Craighead was taken off-site for further medical attention. He received follow-up medical care at the prison the next day and additional off-site medical care

---

[2] Although Craighead does not describe or define the "impact round," the court notes that an "impact round" is typically a non-lethal projectile, such as a beanbag or rubber bullet, fired from a modified firearm.

[3] The court infers from this allegation that Craighead alleges King unjustifiably suspected Craighead of participating in the fight, or perhaps that King directed—or misdirected—Woodward's fire toward Craighead.

[4] He is now an assistant Warden.

on December 6, 2019. Although Craighead's complaint references exhibits from his medical records, the referenced exhibits were not attached to his Complaint.

But Craighead did attach medical records to his response to Defendants' motion to dismiss.[5] According to those records, Craighead suffered a fracture of his facial bone, and his right eye and the right side of his face were swollen. Craighead experienced continuing numbness on the right side of his face through at least January 8, 2020. It is unclear from these medical records whether Craighead's vision was affected.

Separately, Craighead alleges that on July 20, 2017, he was assaulted by multiple officers, including Defendant King, while he was being placed in segregation. The assault and his injuries were not documented. Craighead alleges that, from the time of the 2017 assault to the December 2, 2019 incident, he has been harassed and verbally assaulted.[6]

Craighead does not make any factual allegations regarding the remaining Defendants: Harold W. Clarke, the Director of VDOC; David Robinson, the Chief of Operations of VDOC; K. Manis, the Warden of Wallens Ridge at the date of incident; or David Zook, the current Warden of Wallens Ridge.

As his causes of action, Craighead claims that Defendant Woodward used excessive force without need or provocation, maliciously and sadistically, constituting cruel and unusual punishment in violation of the Eighth Amendment. Craighead further alleges that the other

---

[5] Although outside evidence is typically not considered under Rule 12(b)(6) unless the motion is converted to one for summary judgment under Rule 56, the court may nevertheless consider documents reference in, but not attached to, a plaintiff's complaint. *See, e.g.*, *Gasner v. Cnty. of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995) ("Cases from around the nation suggest that most courts have declared such reliance permissible without converting the motion into one for summary judgment." (collecting cases)).

[6] Craighead references an exhibit related to the 2017 incident, or perhaps to the alleged harassment and verbal assault. But the referenced exhibit was not included with his complaint.

Defendants were deliberately indifferent and/or that they collectively failed to discipline correctional staff to curb a pattern of improper use of excessive force. Craighead contends that this constitutes deliberate indifference to himself and other prisoners, and contributed to and was a proximate cause of Defendant Woodward's assault and violation of Craighead's Eighth Amendment rights. Craighead further alleges state-law tort claims against all Defendants. Craighead also claims that he has been and will continue to be irreparably injured—both mentally and physically—by Defendants' conduct. Craighead seeks declaratory and injunctive relief, as well as compensatory, punitive, and nominal damages.

## II. STANDARD OF REVIEW

In order to allow for the development of a potentially meritorious claim, federal courts have an obligation to construe *pro se* pleadings liberally. *See, e.g., Boag v. MacDougall*, 454 U.S. 364, 365 (1982). Moreover, "[l]iberal construction of the pleadings is particularly appropriate where . . . there is a *pro se* complaint raising civil rights issues." *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009). Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 127, 1278 (4th Cir. 1985). "A *pro se* plaintiff still must allege facts that state a cause of action." *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999).

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). "[I]t does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint

as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," *id.*, with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor. *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

### III. DISCUSSION

A. Statute of Limitations

As a threshold matter, claims arising under 42 U.S.C. § 1983 are in the nature of personal injury claims and are subject to the personal injury statute of limitations and tolling laws in the state where the alleged injury occurred. *Hardin v. Straub*, 490 U.S. 536, 539 (1989); *Blanck v. McKeen*, 707 F.3d 817, 819 (4th Cir. 1983). Virginia has a two-year statute of limitations

for general, personal-injury claims. *See* Va. Code Ann. § 8.01-243(A); *Almond v. Kent*, 459 F.2d 200, 203–04 (4th Cir. 1973). While Virginia statutes of limitation begin to run *once* a claim accrues, federal law governs the question of *when* the claim accrued. *A Society Without A Name v. Virginia*, 655 F. 3d 342, 348 (4th Cir. 2011). Under federal law, a cause of action accrues when the plaintiff possesses sufficient facts to be reasonably apprised of his cause of action. *See Brooks v. City of Winston Salem*, 85 F.3d 178, 181 (4th Cir. 1996). But the limitations period may be equitably tolled to account for the time a prisoner has spent exhausting administrative remedies if the prisoner has pursued his rights diligently and some extraordinary circumstance has stood in his way. *Battle v. Ledford*, 912 F. 3d 708, 718–20 (4th Cir. 2019).

Craighead alleges that he has exhausted all administrative remedies with respect to all claims and Defendants, and he does not allege any prolonged delay in achieving exhaustion of administrative remedies related to the 2017 assault. Thus, any claim that may have arisen from the alleged 2017 assault on Craighead was time-barred when Craighead filed his complaint in this matter on June 19, 2020. Accordingly, the court finds that any claim against Defendant King based on the alleged 2017 assault is barred by the applicable statute of limitations.

B. <u>Defendants Clarke, Robinson, Manis, Zook, and King: Pattern of Unlawful Conduct</u>

Craighead's claims against Defendants Clarke, Robinson, Manis, Zook, Anderson, and King are premised on an alleged pattern of unlawful conduct. "[T]he Fourth Circuit has recognized, both within and outside the context of § 1983 litigation, that claims premised upon allegations concerning a continuing pattern of unlawful conduct that remains in effect when a lawsuit is filed are not barred by the statute of limitations[.]" *Scott v. Clarke*, 64 F. Supp. 3d 813, 826 (W.D. Va. 2014) (citations omitted). A continuing-practice claim may be shown by

a series of separate unconstitutional acts demonstrating a fixed and continuing practice. *A Society Without a Name*, 655 F.3d at 348. If shown to be part of a continuing practice, acts which would otherwise be time-barred may be included as part of the continuing-practice claim. *Scott*, 64 F. Supp. 3d at 826.

Craighead alleges a known pattern of excessive force and, specifically, that Defendants Clarke, Robinson, Manis, Zook, Anderson, and King failed to take action to curb it. Craighead supports this claim by citing to: (1) the alleged 2017 assault by Defendant King (and others); and (2) the 2019 incident involving Defendant Woodward in the course of breaking up a nearby fight.

The events alleged by Craighead are too disparate, both factually and temporally, to plausibly provide a basis for a continuing-violation claim. Accordingly, to the extent Craighead alleges claims against Defendants based on a continuing pattern of unlawful conduct, the court will grant Defendants' motion to dismiss.

C. <u>Defendants Clarke, Robinson, Manis, Zook, and King: Supervisory Liability</u>

Craighead alleges § 1983 claims for deliberate indifference and/or supervisory liability against Defendants Clarke, Robinson, Manis, Zook, Anderson, and King. In support of this claim, Craighead alleges that Defendants failed to take disciplinary or other action to curb the alleged "known" pattern of excessive force by Woodward and other officers. Craighead claims this "supervisory inaction" constituted deliberate indifference to the risks Craighead faced, and both contributed to and was a proximate cause of Defendant Woodward's assault.[7]

---

[7] Craighead's formulation of his claim appears to leave open the possibility of either a supervisory liability claim or a more general, deliberate-indifference claim against Defendants, or both

In order to set forth a claim for supervisory liability under § 1983, a plaintiff must show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "*deliberate indifference* to or tacit authorization of the alleged offensive practices"[;] and (3) that there was an "affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (emphasis added); *see also Slakan v. Porter*, 737 F.2d 368, 372–74 (4th Cir. 1984). Thus, in the *Shaw* formulation, "deliberate indifference" is a sub-element of a § 1983 supervisory liability claim.

Craighead's allegations do not satisfy the *Shaw* elements against Defendants who were, or are, in supervisory positions. As to the first factor, Craighead does not allege that Director Clarke, Chief of Operations Robinson, former Warden Manis, current Warden Zook, or Major (now assistant Warden) Anderson were aware of the 2017 incident, the 2019 incident, or the alleged ongoing harassment and verbal assault, nor that there was subordinate conduct that posed a pervasive and unreasonable risk of constitutional injury to prisoners, including himself. Absent actual or constructive knowledge of a pervasive and unreasonable risk of harm, Craighead's claim of deliberate indifference in the form of supervisory failures cannot survive. Moreover, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983).

To the extent Craighead alleges a § 1983 claim against Defendants Clarke, Robinson, Manis, Zook, or Anderson that is independent of their supervisory roles and responsibilities, Craighead has failed to allege any personal involvement by these Defendants that would support such a claim. Here, the court must differentiate between *personal* liability and *supervisory* liability under § 1983. To state a cause of action for personal liability under § 1983, a plaintiff must allege facts indicating he has been deprived of rights guaranteed by the Constitution or laws of the United States, and that the alleged deprivation resulted from conduct committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Loftus v. Bobzien*, 848 F.3d 278, 284–85 (4th Cir. 2017). Personal liability under § 1983 is "based upon each defendant's own constitutional violations." *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (internal citations omitted). Thus, a § 1983 claim requires factual detail about each defendant's personal involvement. *See Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017) (noting that liability may lie under § 1983 "where it is affirmatively shown that the official charged acted personally" in the violation of plaintiff's rights and affirming dismissal of claim where plaintiff did not allege personal involvement by defendant) (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)). A failure to allege personal involvement by the defendants is fatal to a § 1983 claim. *Vinnedge*, 550 F.2d at 928 (internal citations omitted) (finding there was a failure "to allege any personal connection" and that the cause of action, therefore, "must fail").

Craighead does not allege any personal involvement on the part of Defendants Clarke, Robinson, Manis, or Zook as to either the 2017 assault or the 2019 incident, and thus has not stated any personal § 1983 claim against them. Accordingly, the court will grant Defendants'

motion to dismiss Craighead's § 1983 claims against Defendants Clarke, Robinson, Manis, and Zook.

Craighead's sole factual allegation regarding Defendant Anderson is that Anderson spoke to Craighead when Craighead was removed from his pod for medical attention after the shooting incident of December 2, 2019. Anderson and King informed Craighead that he would not be returned to the pod until video review confirmed that Craighead had not been involved in the fight. The video apparently confirmed that Craighead was not involved because Craighead was returned to the pod seven minutes later. Even if the conversation occurred exactly as Craighead alleges, nothing Anderson said or did implicated, let alone violated, Craighead's constitutional rights. Craighead's claims against Anderson will therefore be dismissed.

D. Defendants King and Woodward: Excessive Force

Craighead makes three factual allegations specific to Defendant King. First, Craighead alleges that, in 2017, King was among several officers who allegedly assaulted Craighead. Second, Craighead alleges King "pointed out" Craighead as correctional officers were entering the pod to break up the fight on December 2, 2019. And third, Craighead alleges that, following the 2019 incident, King and Anderson informed Craighead he would not be returned to the pod until video of the fight confirmed Craighead was not a participant.[8]

---

[8] Craighead does not explicitly allege any § 1983 claim against King for the 2017 assault, and indeed any such claim would be time-barred. *See supra* § III.A. King and Anderson's verbal discussion with Craighead after the 2019 shooting incident, during which they informed Craighead his return to the pod depended on video review, cannot serve as predicate for a § 1983 claim, for the same reason that no such claim is stated against Defendant Anderson. *See supra* § III.D.

These allegations do not provide sufficient basis for a § 1983 supervisory liability claim against King. Because King was not acting in a supervisory capacity as to the first or third events, the *Shaw* elements are not met. Moreover, there is no allegation that King had knowledge of any pervasive and unreasonable risk of constitutional injury occasioned by the conduct of his subordinates.

But Craighead's allegation that King "pointed out" Craighead to Woodward as officers entered to break up the 2019 fight does describe King's own direct involvement in the 2019 shooting incident, and therefore does state a plausible basis for a § 1983 claim against King. The plausible inference drawn from Craighead's allegations is that King deliberately directed Woodward to fire toward Craighead.[9] Accepting Craighead's allegations as true and drawing all reasonable inferences in Craighead's favor, Craighead has plausibly alleged a § 1983 claim against King for King's *direct* participation in a violation of Craighead's Eighth Amendment rights. *See Wilcox v. Brown,* 877 F.3d 161, 170 (4th Cir. 2017) (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)) (explaining that liability may lie under § 1983 "where it is affirmatively shown that the official charged acted personally" in the violation of plaintiff's rights).

"The Eighth Amendment protects prisoners from 'unnecessary and wanton infliction of pain.'" *Thompson v. Commonwealth of Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (citing and quoting *Estelle v. Gamble*, 429 U.S. 97, 102 (1976)). The Eighth Amendment imposes an affirmative obligation to take reasonable measures to ensure inmate safety. *Id.*; *see also Whitley*

---

[9] Such an act may appear to superficially satisfy the *Shaw* factors. *Shaw* has generally been understood to create supervisory liability in situations where there is widespread conduct on the part of subordinate employees, however, or at least conduct that has occurred on several different occasions. *Wilkins v. Montgomery*, 751 F. 3d 214, 226 (4th Cir. 2014) (citing *Shaw*, 13 F.3d at 799). Thus, *Shaw* does not serve to support a supervisory liability claim against King under § 1983.

*v. Albers*, 475 U.S. 312, 319–20 (1986). A prison official may violate an inmate's Eighth Amendment rights either through the official's deliberate indifference or by the application of excessive force. *Thompson*, 878 F.3d at 97. "The deliberate indifference standard generally applies to cases alleging failures to safeguard the inmate's health and safety, including failing to protect inmates from attack, maintaining inhumane conditions of confinement, or failing to render medical assistance." *Id.* (citations omitted). A deliberate indifference claim requires a showing that the prisoner was exposed to a substantial risk of serious harm *and* the prison official knew of and disregarded that substantial risk to the inmate's health or safety. *Id.*

As a *pro se* litigant, Craighead's pleadings are accorded liberal construction and held to a less stringent standard than formal pleadings drafted by lawyers. *Erickson*, 551 U.S. at 94. Given this leniency, his factual allegations are sufficient to state a § 1983 claim based on King's alleged role is directing Woodward to fire at or toward Craighead. Accordingly, Defendants' motion to dismiss will be denied as to Craighead's claim against Defendant King for deliberate indifference in violation of Craighead's Eighth Amendment rights, based on King's alleged role and direct involvement in the 2019 shooting incident.

Likewise, Craighead has alleged a sufficient factual basis for his use of excessive force claim against Defendant Woodward to survive a motion to dismiss.

It is well established that only "the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). On the other hand, not every application of force by a prison guard amounts to a deprivation of constitutional rights. *Id.* at 9. Where officers apply force in a good-faith effort to restore order and discipline, there is no excessive force. *Id.* at 6–7. Courts

recognize that corrections officials must act "in haste, under pressure, and frequently without the luxury of a second chance" to protect the inmate, themselves, and others in the area from harm. *Whitley v. Albers*, 475 U.S. 312, 320 (1986). Consequently, this court must give prison officials "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Hudson*, 503 U.S. at 6.

In this context, the court inquires whether the official subjectively applied force "in a good[-]faith effort to maintain or restore discipline[,] or maliciously and sadistically for the very purpose of causing harm," and whether "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Id.* at 6, 8. The subjective inquiry considers "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible official[], and any efforts made to temper the severity of a forceful response." *Id.* at 7. The objective inquiry of an excessive force claim considers whether the incident involved more than "*de minimis* uses of physical force" by the defendant. *Id.* at 9–10.

"'When prison officials maliciously and sadistically use force to cause harm,' . . . 'contemporary standards of decency always are violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.'" *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). Lack of any serious injury, however, is relevant to the analysis. The extent of the inmate's injury is a factor to consider when determining "whether the use of force could plausibly have been thought

necessary in a particular situation" and as "some indication of the amount of force applied." *Id.*

Craighead alleges that Defendant Woodward fired an impact round that hit Craighead on the right side of his face. Craighead claims that he was hit by Woodward's first shot, that the shot was fired without warning, and that, at the time Woodward shot him, Craighead was 10 feet away from the fight that Woodward was seeking to end. According to the medical records attached to Craighead's response to the motion to dismiss, the impact apparently fractured Craighead's facial bone and caused swelling and numbness for a period of time. Additionally, Craighead's complaint alleges that Woodward used excessive force maliciously and sadistically.

In his motion to dismiss, Woodward argues that Craighead's factual allegations describe, at most, possible negligence. In his opposition brief, Craighead confirms it is his position that Woodward acted maliciously.

Accepting Craighead's allegations as true and drawing all reasonable inferences in Craighead's favor, the court concludes that he states a plausible claim that Defendant Woodward's actions were not "a good-faith effort to maintain or restore discipline," and may instead have been taken "maliciously and sadistically to cause harm." *See Wilkins*, 559 U.S. at 37. The fact that Craighead was 10 feet from the fight and quickly exonerated from involvement in the fight supports his allegation that Woodward acted maliciously in shooting at *him* instead of the actual combatants. Accordingly, the court will deny Defendants' motion to dismiss as to the excessive force claim against Defendant Woodward.

E. Supplemental Jurisdiction

In light of the dismissal of Craighead's federal claims against Defendants Clarke, Robinson, Manis, Zook, and Anderson, the court declines to exercise jurisdiction over the state-law tort claims alleged against them. *See* 28 U.S.C. § 1367(c)(3). Craighead's state law claims against these defendants will be dismissed without prejudice. *See id.*

### D. CONCLUSION

In conclusion, the court will grant Defendants' motion to dismiss Craighead's claims against Defendants Clarke, Robinson, Manis, Zook, and Anderson. Defendants' motion to dismiss will be denied as to the § 1983 claims against Defendants King and Woodward.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to Craighead and all counsel of record.

**ENTERED** this 30th day of September, 2021.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE